# AFFIDAVIT OF Thomas J. King

# SPECIAL AGENT

# BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES

I, Thomas J. King, being duly sworn, depose and state that:

## I. EXPERIENCE OF AFFIANT

I am a graduate of Buffalo State College, where I obtained a Bachelor of Science in criminal justice. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Department of Justice, and have been so employed since February 14, 2001. Prior to that I was a Special Agent with the Immigration and Naturalization Service for five years, and an Inspector with the United States Customs Service for three years.

I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy; as a result of my training and experience as an ATF Special Agent, I am familiar with the Federal Firearms and Explosives laws. Through my experience I have investigated numerous cases involving 18 USC 922(g)(1), violations involving felons in possession of firearms, 18 USC 924(c), Use of a Firearm in Furtherance of a Violent Crime or a Crime Involving Drug Trafficking, and 21 USC 841 et seq, Controlled Substance violations.

## PURPOSE OF AFFIDAVIT

Based on the facts set forth in this affidavit, there is probable cause to believe that violations involving the distribution and possession, with intent to distribute controlled substances, in violation of 21 USC 841 et seq, felon in possession of a firearm, in violation of 18 USC 922(g)(1), and use of a firearm in furtherance of drug trafficking, in violation of 18 USC 922(c), have been committed by Armthea JOHNSON.

## PROBABLE CAUSE:

1. On August 4, 2021, ATF conducted an undercover operation with the intent to have an ATF Undercover Agent (UCA) purchase narcotics from Armthea JOHNSON. During an ongoing investigation, I had previously identified JOHNSON as a methamphetamine and heroin trafficker, living at 221 ½ E. 12th Avenue, apartment #4. Surveillance was in place before ATF UCA 4121 attempted to make contact with JOHNSON, and eventually Agents on surveillance observed JOHNSON arrive at her apartment. Before UCA 4121

**AUG 1 9 2021**

1

went to JOHNSON's apartment, he activated a recording and transmitting device. His interaction with JOHNSON was recorded, and monitored by Agents on surveillance.

2. UCA 4121 made contact with JOHNSON, and confirmed he wanted to purchase three ounces of methamphetamine from her. At a point in the interaction with JOHNSON, UCA 4121 observed a semi-automatic pistol on the floor of JOHNSON's apartment. Eventually UCA 4121 noticed it was no longer on the floor, and presumed JOHNSON had secured it. JOHNSON told UCA 4121 she had to walk across the courtyard to another apartment building to obtain the methamphetamine she intended to sell to UCA 4121. Agents watched as JOHNSON walked across the courtyard. When JOHNSON was startled by two men walking by, she lifted her shirt as if readying herself to reach for something, and ATF TFO Adair observed a handgun tucked into JOHNSON's waistband.

3. JOHNSON then continued to an apartment across from hers and was in that apartment for approximately 45 minutes to an hour. UCA 4121 waited in her apartment while she was gone. When JOHNSON returned to her apartment, she then transferred approximately 14.6 grams of methamphetamine to UCA 4121.

4. JOHNSON claimed she was trying to obtain the rest of the methamphetamine she had agreed to sell UCA 4121. While UCA 4121 waited in JOHNSON's apartment, JOHNSON exited the apartment and walked around several times. I was able to observe that JOHNSON exhibited the characteristics of someone carrying a concealed handgun. I could see the imprint of what looked like a handgun under JOHNSON's shirt. Several times JOHNSON moved the object as if to make sure it was secured, and secured it by pressing a hand against the object as she walked.

5. JOHNSON was not able to procure the methamphetamine she had promised UCA 4121, and eventually UCA 4121 told JOHNSON he would come back some other time, and left JOHNSON's apartment.

6. After the operation was terminated, I debriefed UCA 4121 regarding his interaction with JOHNSON. The aforementioned facts are a summary of UCA 4121's interaction with JOHNSON during his purchase of the methamphetamine and is not complete account of everything that was said, or observed by UCA 4121. I also secured the methamphetamine UCA 4121 purchased from JOHNSON. I conducted a field test and obtained a presumptive positive result for the presence of methamphetamine.

AUG 1 9 2021

7. I have queried JOHNSON's criminal history in APSIN and have confirmed that JOHNSON has numerous state felony convictions and one Federal felony conviction. During interaction with UCA 4121, JOHNSON had referred to have having a prior Federal conviction several times.

8. On August 19, 2021, ATF Agents, assisted by the Anchorage Police Department, executed Federal Search Warrant 3:21-mj-426-DMS, for JOHNSON's apartment at 221 ½ E. 12th Ave., Anchorage. JOHNSON was inside the residence at the time Agents made entry into her apartment. In a backpack in the middle of the living room floor, Agents discovered and seized a sawed-off Marlin, .22 caliber semi-automatic rifle. There was a male guest inside the apartment, but he did not make claim to ownership or possession of anything inside JOHNSON's apartment.

9. On August 19, 2021, I spoke with ATF Agent Ryan Borgeson. He stated that the Marlin rifle seized from JOHNSON's apartment was not made in the State of Alaska and has travelled in interstate commerce.

Thomas J. King,
**Special Agent**
**BUREAU OF ALCOHOL, TOBACCO**
**FIREARMS AND EXPLOSIVES**

SUBSCRIBED AND SWORN ~~TO before me~~ by telephone this 19 day of August, at Anchorage, Alaska.

Deborah M. Smith
United States Magistrate Judge

3